Case 23.—PROCEEDINGS BY THE SOUTHERN RY. CO. IN KEN-
TUCKY TO CONDEMN THE LAND OF GEORGE W.
SHIRLEY.—October 11.

## Shirley v. Southern Ry. Co. in Kentucky.

Appeal from Mercer Circuit Court.

M. C. SAUFLEY, Circuit Judge.

From the judgment awarding damages defendant
appeals. Affirmed.

1. Eminent Domain — Proceedings—Appeal — Trial De Novo—
Under the statute requiring that, where there are exceptions
and an appeal to the circuit court from the judgment of the
county court in proceedings to condemn land, the appeal
shall be tried de novo, the circuit court on appeal properly
submits to the jury the whole question of damages, though
no exceptions were filed to so much of the commissioner's
report as ascertained the amount of the damages to the land
not taken.

2. Same—Evidence—Admissibility—In proceedings by a railroad
company to condemn land for a right of way, evidence of-
fered by the owner of the land of the number of children
composing his family was properly excluded.

3. Appeal—Objections not Made in Lower Court—Where no ob-
jection was made to the testimony of witnesses who gave
their opinions as to the damage accruing to the owner of land
by reason of a railroad acquiring a right of way through it,
the court on appeal will not review the court's ruling as to
its competency.

4. Eminent Domain—Railway Right of Way—Public Use—That
citizens of a county, as an inducement to a railroad company
to build a road, agree to furnish the right of way, does not
affect the fact that the land is to be obtained for a public
purpose and is necessary therefor.

5. Same—Elements of Compensation—The jury, in awarding
compensation for the taking of land for a railway right of
way, should award to the land owner the reasonable value
of the land proposed to be taken, determined by considering

its productive capacity and its relation to the remainder of the land, together with the reasonable cost of fencing made necessary by the building of the road, the depreciation in the market value of the whole or any part of the land by reason of the separation of the land into parcels, the depreciation in the market value of the land not taken because of any reasonable apprehension of danger of fire resulting from the prudent operation of the road, the inconvenience that the owner will suffer by reason of crossing over the road from one part of the land to another, and the discomforts in his residence by smoke, etc., produced by locomotives on the track, that are properly equipped and prudently operated.

ROBERT HARDING for appellant.

W. C. BELL of counsel.

We insist that this case should be reversed because of the following errors:

1. Because the court erred in overruling the motion of defendant herein to confirm the commissioner's report as to incidental damages allowed therein of $1,250, there being no exceptions thereto filed by the plaintiff.

2. Because the court erred in refusing, upon the defendant's motion, to dismiss these proceedings upon the ground the court has no jurisdiction to try the same, the plaintiff never having before the institution of these proceedings endeavored to contract with defendant for said passway through his lands, and no public necessity is shown by the proof requiring the taking of defendant's land for railroad purposes.

3. Because the verdict of the jury is flagrantly against the law and the evidence.

4. Because the court, over defendant's objection, permitted 'J. A. Quisenberry, G. W. Welch and other witnesses to give speculative opinions before the jury as to what will be the market value of the two adjacent tracts of defendant's land after the location and operation of the proposed railroad through his lands sold as separate tracts, and also in regard to the cost of obtaining water from other wells to be hereafter made on Shirley's farm.

5. Because the court erred in refusing instruction A asked by the defendant to be given to the jury.

6. Because the court erred in giving instructions Nos. 1, 2, 3, 4 and 5, and in giving each and all of said instructions.

7. Because one of the jurors on the jury, before being taken thereon, expressed an opinion in regard to giving of damages to this defendant in these proceedings, adverse to this defendant.

Shirley v. Southern Ry. Co. in Kentucky.

8. Because the damages awarded are not the true amount sustained by defendant.

### AUTHORITIES CITED.

Sec. 835, Ky. Stats.

HUMPHREY, HINES & HUMPHREY and E. H. GAITHER for appellee.

We respectfully submit that if the court will go through this record and look at this evidence it will find a farm of about 130 acres, worth about $4,000 at the outside; 5.3 acres is taken by the railway, and the railway company is compelled to pay $1,700. In other words, Shirley had a farm of 130 acres, worth about $4,000. He now has a farm of about 125 acres at $2,300, that is, the railway company, in buying five acres out of 130, has paid almost half the value of the whole farm.

### AUTHORITIES CITED.

Portland & Greenwood Turnpike Co. v. Bobb, 88 Ky., 227; Ky. Stats., sec. 767, clause 4; Jones v. Wocher, 90 Ky., 230; L. & N. R. R. Co. v. McCoy, 81 Ky., 401; Meaux v. Meaux, 81 Ky., 475; W. Va. R. R. Co. v. Gibson, 94 Ky., 234;L., St. L. & T. R. R. Co. v. Barret, 91 Ky., 490; Asher v. L. & N. R. R. Co., 87 Ky., 396; Fitzpatrick v. Harris, 16 B. M., 564; Drake v. Drake, 107 Ky., 32.

OPINION BY JUDGE BARKER—Affirming.

The Southern Ry. in Kentucky is a corporation organized under the laws of this State, and was, prior to the time when this controversy arose, operating a railroad from Louisville to Burgin, Ky. Desirsiring to extend its line from Burgin to Danville, in order to secure the necessary right of way, it sought, among other things, to condemn a part of the farm belonging to the appellant, George W. Shirley, situated in Mercer county, under the provision of subdiv. 4, art. 5, chap. 32, Ky. Stats. 1903. That part of the farm which it undertook to condemn is a strip 100 feet wide, containing 5.8 acres of land. After filing the necessary petition in the Mercer County

Court, commissioners were appointed, who viewed the land in question and reported the loss arising from taking it to be $2,500; $1,250 being the value of the land taken, and $1,250 direct and incidental damages. The railroad filed exceptions to so much of the report as - ascertained the value of the land taken to be $1,250, whereupon a jury was impaneled in the county court, and the matter tried before them, with the result of a verdict in favor of Shirley for the sum of $2,400. From the judgment based upon this verdict the railroad appealed to the circuit court, where, the matter being tried de novo, a verdict was returned in favor of appellant for the sum of $1,700; $1,120 being for direct and incidental damages, and $580 the value of the land taken. To review the judgment based upon this verdict Shirley is here on appeal.

The appellant, among other things, complains that the circuit judge overruled his motion for a peremptory instruction to the jury to find the damages sustained by him by reason of the taking of his land to be $1,250. This motion was predicated upon the theory that, because the railroad did not file exceptions to so much of the commissioner's report as ascertained the damages to be $1,250, therefore, upon a trial of the case in the circuit court the question of damages was closed. To this we can not agree. It would have, perhaps, been better had appellee excepted to the report as a whole; but the statute requires that, where there are exceptions and appeal to the circuit court from the judgment in the county court, "the appeal shall be tried de novo." We therefore conclude that upon the appeal in this case to the circuit court the whole question of damages was properly submitted to the jury.

The court properly overruled the evidence prof-

fered by appellant as to the number of children of
which his family consisted.   This evidence tended
to throw no light upon the question in issue.   As
no objection was made to the testimony of J. A.
Quisenberry and George Welch, and the other wit-
nesses who gave their opinions as to the damage ac-
cruing to appellant by reason of the condemnation
of his land, we must decline to review the court's
ruling as to its competency.   We think the evidence
abundantly established the fact that the railroad in
good faith undertook to acquire the land in question
from appellant ·without litigation, and failed, be-
cause it thought he demanded an unreasonable sum
as compensation.   The fact that the citizens of Boyle
county, as an inducement to the railroad to build
the line from Burgin to Danville, agreed to furnish
the right of way, in nowise militates against the
proposition that the land was to be obtained for a
public purpose, and was necesary therefor.

At the conclusion of all the evidence, the court in-
structed the jury as follows:

"Instruction No. 1. You will find for defendant,
Shirley, the reasonable value of the land, including
the well proposed to be taken by the railroad com-
pany.   In fixing this value you will consider both its
productive capacity and its relation to the remain-
der of defendant's farm.

"Instruction No. 2. (a) You will find for defend-
ant, Shirley, the reasonable cost of such fencing as
you may believe from the evidence will be made nec-
essary by the building of the road. You will your-
selves judge what character of fence of the several
kinds called lawful is reasonably sufficient.   (b) If
you believe, from the evidence, that by reason of the
separation of the farm into parcels there will be a
depreciation of the market value of the whole or any

part of the farm, or, if there be any depreciation of the market value of the farm because of any reasonable apprehension of danger of fire resulting from the prudent operation of a properly equipped locomotive, then you will find for defendant such sum as you may believe, from the evidence, will be equivalent to the depreciation, whether from one of these causes or both of them. (c) If you believe, from the evidence, that defendant will suffer any trouble or inconvenience in crossing over the road in going from one part of his farm to another, or if you believe, from the evidence, that he will be subjected to any annoyance or discomforts in his residence by reason of any smoke, cinders or soot produced by properly equipped locomotives under prudent operation, or if you believe, from the evidence, that any of the causes herein mentioned in subdivision 'c' will injuriously affect the market value of the farm, then you will find for defendant such sum as you believe, from the evidence, will reasonably compensate him for such of these elements of damage as you believe will accrue.

"Instruction No. 3. You will consider no other elements of damage than those specified in the two foregoing instructions; and you will be careful not to consider as an element of damage any damage from fire, or any discomfort or annoyance from smoke, soot or cinders, either from an imperfectly equipped locomotive or from a locomotive imprudently operated.

"Instruction No. 4. Every strong and sound fence, of rails, or wire, or plank, or wire and plank, or iron, or of hedge 4 1-2 feet high, and being so close that cattle can not creep through, or made of stone or brick 4 1-2 feet high, or a ditch 3 feet deep and 3 feet broad, with a hedge of 2 feet high, or a rail,

plank, stone, smooth or barbed wire, or brick fence, 21-2 feet high, on the margin thereof, the hedge or fence being so close that cattle can not creep through, is a lawful fence.

"Instruction No. 5. In framing your verdict, you will state the value of the land as directed in instruction No. 1 separately from the damages specified in instruction No. 2; then state the aggregate of the two sums."

It is difficult to imagine any element of damage which could accrue to appellant by reason of the taking of his land by the appellee which is not provided for in the foregoing instructions. They certainly state the law of the case as favorably to him as he was entitled; and, in our opinion, the verdict of the jury bountifully remunerated him for the loss of his property. The farm of 135 acres had been acquired by the appellant shortly before these proceedings at the estimated sum of $4,000 in a trade, since which time he claimed to have made $1,000 worth of improvements; the whole thus costing him on his own showing, $5,000, being about $40 an acre. He sold 5 3-10 acres of it in this proceeding to the railroad for $580, being more than $100 an acre; and we think from the evidence that the estimate of the jury as to the damages was equally liberal as their estimate of the value of the land. It is true the $580 allowed for the land included the value of the well situated on the right of way. Yet we think, from the evidence, as to the cost of digging another well on the same stream on either side of the strip taken, the jury estimated the value of the 5 3-10 acres at least at twice its market value.

Being unable to perceive any injury to the sub-

stantial rights of the appellant, the judgment is affirmed.